UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ERNESTINE GABLE                      CIVIL ACTION NO. 6:17-cv-01143

VERSUS                               JUDGE JAMES

NANCY A. BERRYHILL,                  MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's decision to terminate the claimant's Supplemental Security Income ("SSI") benefits during the time period from July 2012 through January 2014 on the basis that the claimant had resources in excess of the amount permitted for SSI eligibility.  Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and that benefits be awarded for the relevant time period.

## Background

The claimant, Ernestine Gable, is a 53-year-old woman who lives in Franklin, Louisiana.  According to the decision of Administrative Law Judge Nancy M. Pizzo, which was rendered on March 18, 2015,

> The claimant received supplemental security income disability payments from February 1989 through October 2011.  Her benefits were ceased beginning November 2011, and the claimant was charged

> with an overpayment of benefits from April 2010 through October 2011 because the Social Security Administration determined that the claimant had resources in excess of the allowable amount of $2,000.00 during that period of time.

The record does not include any evidence concerning the adjudication of Ms. Gable's application for Social Security disability benefits that resulted in her being paid benefits starting in February 1989.  And the only evidence related to the termination of her disability benefits in November 2011 is Ms. Gable's hearing testimony that her benefits were terminated because she purchased a lot worth more than $2,000 and a mobile home to place on the lot, but the mobile home was never delivered, precluding her ability to live on the lot.[1]

In July 2012, Ms. Gable filed a new application for SSI benefits, alleging that she became disabled on February 2, 1989.[2]  In January 2014, Ms. Gable was found to be under a disability as defined in the Social Security Act since July 9, 2012.[3]  At that time, ALJ John R. Burgess found that she had the following severe impairments: diabetes mellitus, peripheral neuropathy, illiteracy, and obesity.[4]  Ms. Gable's

---

[1]     Rec. Doc. 7-1 at 152.

[2]     Rec. Doc. 7-1 at 107.

[3]     Rec. Doc. 7-1 at 95.

[4]     Rec. Doc. 7-1 at 90.

counsel also contends that she has mental impairments[5] including diagnoses of schizophrenia and bipolar disorder[6] and intellectual challenges.[7] She has only a sixth grade education[8] and during school was always in special education classes.[9]

The following undisputed facts are established in the record. Ms. Gable lived at 312 Easy Street in Franklin, Louisiana from at least 2005 forward. She owned the mobile home that she lived in, but she did not own the lot on which the mobile home was located. After a hurricane destroyed Ms. Gable's mobile home,[10] she received disaster relief funds of slightly more than $30,000. In April 2010, she used a portion of those funds to purchase for approximately $12,000 the same lot where her trailer had previously been located. She also purchased a different mobile home to be placed on the lot for approximately $15,000. The person from whom she purchased the mobile home, Reginald Thomas, absconded with Ms. Gable's money. Ms. Gable pursued criminal charges against Mr. Thomas. Mr. Thomas pleaded guilty, and he

---

[5]     Rec. Doc. 7-1 at 17, 23, 24, 74.

[6]     Rec. Doc. 7-1 at 25, 74.

[7]     Rec. Doc. 7-1 at 74.

[8]     Rec. Doc. 7-1 at 135

[9]     Rec. Doc. 7-1 at 143.

[10]    It is not clear from the record which hurricane destroyed Ms. Gable's mobile home or when the home was destroyed. There are references to Hurricane Gustav in the record. Hurricane Gustav made landfall on the Louisiana coastline on September 1, 2008. National Weather Service, https://en.weather.gov/lix/gustavsummary (last visited August 20, 2018).

was ordered to pay restitution to Ms. Gable.  When he failed to do so, he was then ordered to provide a mobile home to Ms. Gable.  He did so, and Ms. Gable moved in on January 14, 2014.  However, the mobile home provided by Mr. Thomas is in such poor condition that it is virtually uninhabitable.  Therefore, on October 30, 2014, Mr. Thomas was ordered to remove the mobile home from Ms. Gable's lot and to pay her $14,135.00.  It is not known whether the court-ordered restitution has been paid.

According to the ALJ, the Social Security Administration denied the payment of SSI benefits to Ms. Gable from July 2012 through January 2014 because she had resources in excess of the amount allowable for SSI eligibility.  In other words, so long as the lot was vacant and there was no dwelling on the lot that would meet the definition of a home as that term is used in the relevant statutes, the lot constituted a resource that disqualified Ms. Gable's from receiving SSI benefits.  Ms. Gable asked the Appeals Council to review the decision.  The Appeals Council found no basis for changing the ALJ's decision, noting that "existing regulations and policies do not provide for an exclusion of non-home real property due to being a victim of a crime."[11]  What the ALJ and the Appeals Council both failed to grasp is that the only reason Ms. Gable was not able to live at 312 Easy Street in a mobile home that she

---

[11]     Rec. Doc. 7-1 at 6.

4

owned situated on a plot of ground that she also owned is because she was a victim of crime.

## The Applicable Law

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[12]   To qualify for SSI, a person cannot have resources exceeding a value of $2,000.[13]  The value of a person's home is excluded from the calculation of his or her resources, regardless of the value of the home.[14]  The rules define the term "home" to include "any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence."[15]   If the person moves away from her home without the intent to return, the value of the home is no longer excluded from the resource calculation.[16]  The implication of that rule is that if the person moves away from her home but retains the intent to return, the home continues to be an excludable resource.  If a home is damaged due to a catastrophe declared by the

---

[12]     42 U.S.C. § 1382(a)(1) & (2).

[13]     42 U.S.C. § 1382(a)(1)(B).

[14]     20 C.F.R. § 416.1212(a) and (b).

[15]     20 C.F.R. § 416.1212(a).

[16]     20 C.F.R. § 416.1212(c).

President of the United States to be a major disaster, any disaster relief funds (and any interest earned on those funds) are excluded from the resource calculation.[17]  If an excluded resource is lost, damaged, or stolen, any cash or in-kind replacement for that resource is also an excluded resource – but only if repairs or replacement of the resource occur not more than a maximum of eighteen months after receipt of the cash or in-kind replacement.[18]

The issue now before the court requires an analysis of these rules as applied to the facts presented in the record.  The first step in statutory interpretation requires a court to examine the plain meaning of the statutory language.[19]  A court is "authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress."[20]  Additionally, it is well settled that the Social Security Act is to be broadly construed and liberally applied.[21]  "When assessing Social Security

---

[17]    20 C.F.R. § 416.1237.

[18]    20 C.F.R. § 416.1232.

[19]    *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015); *United States v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).

[20]    *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)).

[21]    *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979).  See, also, *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972) ("the Social Security Act should be liberally construed in favor of disability and the intent is inclusion rather than exclusion."); *Craig v. Finch*, 425 F.2d 1005, 1009 (5th Cir. 1970) ("The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives.").

disability claims, the ALJ and the courts must give due regard for the beneficent purposes of the legislation and apply a more tolerant standard than that which is used in a typical suit."[22]

## <u>Analysis</u>

In her ruling of March 18, 2015, the ALJ found that Ms. Gable waited an unreasonable length of time before attempting to make improvements on the property she purchased with her disaster relief funds and took no action to divest herself of the excess resource – the lot located at 312 Easy Street – for an unreasonable length of time.  On that basis, the ALJ found that the parcel of land owned by Ms. Gable at 312 Easy Street in Franklin, Louisiana, cannot be excluded from the calculation of her resources and disqualified her from receiving SSI benefits during the time period from July 2012 (when she applied for benefits) through January 2014 (when she moved into a mobile home on the lot).

Had Ms. Gable simply put the disaster relief funds she received after the hurricane in a bank account, they would not have counted against her.  Had Ms. Gable used the funds to purchase a mobile home from someone who did not defraud her, her ownership of the mobile home and the lot on which it was situated would

---

[22]    *McCarter v. Colvin*, No. 3:14-CV-479-CWR-FKB, 2016 WL 411077, at *2 (S.D. Miss. Feb. 2, 2016), (quoting *McFadden v. Prudential Ins. Co. of America*, 877 F. Supp. 2d 481, 492 n. 11 (S.D. Miss. 2012) (quoting *Ventura v. Shalala*, 55 F.3d 900, 902 (3rd Cir. 1995)).

not have counted against her.  Had the criminal justice system acted more swiftly and provided Ms. Gable with the means to acquire a habitable dwelling within the deadlines set forth in the statutes cited above, her ownership of those assets would not have counted against her.

There is no evidence in the record that Ms. Gable attempted, within eighteen months after the hurricane destroyed her home, to show good cause to the Social Security Administration for her failure to use the disaster relief funds that she received to acquire a new home.  However, the unique facts presented here establish that it was Ms. Gable's intention, at all times following the destruction of her original mobile home by a hurricane, to acquire another mobile home and place it on the lot at 312 Easy Street so that she could live there.  She was thwarted in that intention by the criminal acts of Mr. Thomas and by the slow speed at which the criminal justice system operated in this case.  Her efforts may also have been impacted by her own intellectual and educational deficiencies and the medical conditions that resulted in her being determined to be disabled in the first place.

The only resources that Ms. Gable had, aside from the life insurance policies mentioned in the record, are the lot she purchased and the mobile home ultimately provided by Mr. Thomas.  Had she sold the lot, she would have had no place on which to place the mobile home that she expected to acquire with monetary or in-kind restitution by Mr. Thomas.  The Commissioner argued that "there is no specific

8

exclusion for items purchased with disaster assistance"[23] and the land that Ms. Gable

purchased therefore became a countable resource disqualifying her from receiving

SSI benefits.[24]

This Court finds that the result supported by the Commissioner is untenable

under the facts of this case.  Ms. Gable did not squander her hurricane disaster funds.

She tried to use them to purchase a home.  Through no fault of her own and because

of the criminal acts of another person, she was not able to reach that goal.  She

pursued restitution through the criminal courts, which delayed beyond the eighteen

month period of time ordinarily allotted by statute her ability to place a dwelling on

the land she purchased.  Holding that it was unreasonable for Ms. Gable to wait so

long before beginning to live on the lot she purchased punishes her for the criminal

acts of another and for the slow speed at which the criminal justice system worked

in this instance.  Such a result would be an unreasonably rigid application of the

relevant statute and adverse to the spirit of the Social Security Act, which seeks to

provide financial assistance to those like Ms. Gable who have been found to be

unable to work due to physical or mental impairments and have no resources upon

which to fall back.  Ms. Gable displayed persistence against almost overwhelming

odds in pursuing her criminal claims against Mr. Thomas for several years, even

---

[23]     Rec. Doc. 9 at 5.

[24]     Rec. Doc. 9 at 6.

after the Commissioner stopped paying her SSI benefits.   While this Court acknowledges that the delays in this case were extraordinarily long, it is well settled that the Social Security Act is to be broadly construed and liberally applied.   More specifically, other courts have extended deadlines established in the Social Security Act when they were determined to be unreasonable and in contravention of the spirit of the act[25] and other courts have considered whether the recovery of overpayments would be against equity and good conscience.[26]

Whether overpayments to Ms. Gable should have been recouped by the Social Security Administration is not before the court at this time.   However, this Court is of the opinion that the statute permitting the waiver of such a recoupment when the SSI claimant is without fault and the recovery would either defeat the purpose of the SSI program or be against equity and good conscience[27] is instructive in light of the facts presented here.   This is the type of situation in which a rigid adherence to the rules results in a ruling that is both contrary to the purpose of the SSI program and against equity and good conscience.   This Court finds that the statutory deadlines for

---

[25]    See, e.g., *Baugh v. Sullivan*, No. CIV-85-1024E, 1989 WL 122117, at *1 (W.D.N.Y. Oct. 10, 1989) (finding that an illness in the family constituted good cause for tolling the deadline for filing a civil action seeking review of an adverse Social Security determination and further finding that to hold otherwise would violate the spirit of the act).

[26]    See, e.g., *Archuleta v. Bowen*, 655 F.Supp. 1196, 1201 (D.Wyo., 1987).

[27]    42 U.S.C. § 1383(b)(1)(B).

the replacement of lost, damaged, or stolen excluded resources should have been tolled pending the final adjudication of the criminal proceedings against Mr. Thomas and Ms. Gable's replacement of her original mobile home with a suitable dwelling, since the theft of the $15,000 purchase price that Ms. Gable paid to Mr. Thomas constitutes good cause for her not having complied with the statutory deadlines.  Any other result would be absurd and, consequently, an improper interpretation of the relevant statute.

### Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions for the Commissioner to ensure that Ms. Gable receive SSI benefits for the time period from July 2012 forward.  Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[28]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

[28]   See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[29]

Signed in Lafayette, Louisiana, this 28th day of September 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[29]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

12